**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | | |
|---|---|---|
| **INTERNATIONAL UNION OF PAINTERS AND ALLIED TRADES DISTRICT COUNCIL NO. 91,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Case No. 1:26-cv-00120-ALT** |
| **HALL ALUMINUM PRODUCTS,** | ) | |
| **Defendant.** | ) | |

**OPINION AND ORDER**

Before the Court is a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6) filed by Defendant Hall Aluminum Products, Inc. ("Hall"), on April 8, 2026. (ECF 3, 4). Plaintiff International Union of Painters and Allied Trades District Council No. 91 (the "Union) filed a response in opposition on April 29, 2026 (ECF 16), and Hall timely replied (ECF 18). The Union later filed a sur-reply with leave of Court. (ECF 19, 20). Therefore, the motion to dismiss is ripe for ruling.

Because the Union's complaint fails to plausibly allege a contractual duty to arbitrate, Hall's motion to dismiss will be GRANTED, with leave to replead.

***A. Factual and Procedural History***

The Union and Hall, a commercial architectural glass and glazing contractor, have a long collective bargaining relationship. (ECF 1 ⁋⁋ 5, 7). Pertinent to this dispute, Hall was signatory to a collective bargaining agreement with the Union with effective dates of July 1, 2018, through June 30, 2021 (the "CBA").[1] (*Id.* ⁋ 8). Prior to the expiration of the CBA, the parties began

[1] The CBA was not filed with the complaint and is not yet of record.

negotiating for a successor agreement. (*Id.* ⁋ 9). During that time, various disputes arose between the parties, culminating in an August 2024 settlement negotiated by the National Labor Relations Board (NLRB), the Union, and Hall for unfair labor practice charges and election objections raised by the Union. (*Id.* ⁋⁋ 10-14). The settlement required Hall to recognize the Union as the sole and exclusive bargaining representation of the employees defined by the CBA and to negotiate in good faith for a successor agreement (the "2024 Settlement"). (*Id.*).

The Union alleges that "[s]ince that time, Hall has recognized both through its actions and the words of its representatives that the terms of the [CBA] are in effect while the [p]arties negotiate the successor agreement." (*Id.* ⁋ 15). The Union further alleges that the parties have not yet successfully negotiated a successor agreement to the CBA "so the [CBA] remains in effect . . . ." (*Id.* ⁋ 16).

In late 2025, the Union raised a wage dispute with Hall concerning an Indianapolis project, asserting the rates Hall was paying employees were in violation of the CBA. (*Id.* ⁋⁋ 18-19). On December 24, 2025, Hall's Joe Schweiterman responded to the Union in an email that "Hall has paid, and will continue to pay, what is required under the status quo CBA." (*Id.* ⁋ 21). This disagreement culminated in the Union filing a grievance under the CBA on January 5, 2026, asserting that Hall had violated Sections 3 and 4 of the CBA. (*Id.* ⁋ 23). On January 12, 2026, Schweiterman denied the grievance and conveyed that Hall would "not submit this matter to arbitration under an expired agreement." (*Id.* ⁋ 24). He affirmed Hall's position several weeks later. (*Id.* ⁋ 26).

On March 9, 2026, the Union filed a single-count complaint against Hall in this Court, asserting that Hall breached a collective bargaining agreement between the parties by refusing to submit the January 5, 2026, grievance to arbitration. (*Id.* ⁋⁋ 8, 29, 33). Hall filed the instant motion to dismiss on April 8, 2026 (ECF 3), together with a supporting memorandum (ECF 4),

in which Hall advances a series of arguments under Rules 12(b)(1) and (6) in support of dismissal.

Hall first argues the Union's complaint should be dismissed due to lack of subject matter jurisdiction under Rule 12(b)(1) because § 301 of the Labor Management Relations Act (LMRA) requires a valid, operative contract between an employer and a labor organization for federal jurisdiction, and here the CBA expired in June 2021. (ECF 4 at 12). Next, Hall argues that the Union's claim is "primarily representational" rather than "primarily contractual" in nature, and as such, is more properly characterized as an unfair labor practice claim under § 8(a)(5) of the National Labor Relations Act (NLRA) within the exclusive jurisdiction of the NLRB. (*Id.* at 14-15). Third, Hall asserts the Union's complaint constitutes an impermissible attempt to enforce the obligations allegedly imposed by the 2024 Settlement through the guise of § 301. (*Id.* at 19).

In its Rule 12(b)(6) arguments, Hall contends: (1) its duty to arbitrate any grievance terminated on June 30, 2021, upon expiration of the CBA; (2) the January 2026 wage grievance at issue does not fall within the narrow tri-part exception the Supreme Court discussed in *Litton Financial Printing Division v. NLRB*, 501 U.S. 190 (1991), for determining whether a post-expiration grievance is arbitrable; (3) the 2025 grievance is untimely under the Seventh Circuit's temporal limitation with respect to the limited presumption for arbitration created in *Nolde Brothers v. Local No. 358, Baker & Confectionery Workers Union*, 430 U.S. 243 (1977); (4) the parties' statutory duty under the NLRA to maintain the status quo with respect to substantive terms and conditions of employment such as wages, hours, and working conditions, *see* 29 U.S.C. § 158(a)(5), does not extend to arbitration; and (5) neither the 2024 Settlement nor Hall's conduct created or extended a duty to arbitrate. (ECF 4 at 23-36). As stated earlier, Hall's motion to dismiss is now fully briefed and ripe for ruling. (*See* ECF 3, 4, 16, 18, 19). After setting forth a brief legal standard, the Court will address Hall's arguments in turn.

### *B. Legal Standard*

"A Rule 12(b)(1) motion tests whether the Court has subject-matter jurisdiction, where as a Rule 12(b)(6) motion tests the sufficiency of the complaint." *Zuniga v. Asset Recovery Sols.*, No. 17-cv-05119, 2018 WL 1519162, at *1 (N.D. Ill. Mar. 2, 2018) (citations omitted). "In order to survive a Rule 12(b)(1) motion, the plaintiff must establish that the district court has subject-matter jurisdiction." *Id.* (citation omitted). "If a defendant challenges the sufficiency of the allegations regarding subject matter jurisdiction … , the Court accepts all well-pleaded factual allegations as true and draw[s] all reasonable inferences in favor of the plaintiff." *United States ex rel. Cause of Action v. Chi. Transit Auth.*, 71 F. Supp. 3d 776, 780 (N.D. Ill. 2014) (citations omitted). The burden of proof lies with the party asserting jurisdiction. *Alexander v. Ne. Ill. Univ.*, 586 F. Supp. 2d 905, 909 (N.D. Ill. June 23, 2008) (citation omitted).

Rule 12(b)(6) provides for the dismissal of a complaint, or any portion of a complaint, for failure to state a claim upon which relief can be granted. *Id.* "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotations omitted); *see also Ray v. City of Chi.*, 629 F.3d 660, 662-63 (7th Cir. 2011) ("While the federal pleading standard is quite forgiving … the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." (citation omitted)). A plaintiff is required to include allegations in the complaint that "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level'" and "if they do not, the plaintiff pleads itself out of court." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569 n.14 (2007)). "Threadbare recitals of elements of a cause of action and allegations that are merely legal conclusions are not sufficient to survive a motion to dismiss." *Kim v. StoneX Grp. Inc.*, No.

22-cv-02392, 2022 WL 17082574, at *2 (N.D. Ill. Nov. 18, 2022) (citing *Iqbal*, 556 U.S. at 678).

### *C. The Complaint Fails to Plausibly Allege an Enforceable Arbitration Agreement*

Section 301 of the LMRA authorizes suits for "violation of contracts between an employer and a labor organization." 29 U.S.C. § 185. Hall argues that the Union's complaint must be dismissed under Rule 12(b)(1) because the complaint alleges the CBA expired in June 2021 and the parties have not yet successfully negotiated a successor agreement. (ECF 4 at 12). According to Hall, without a valid contract, the Court lacks subject matter jurisdiction over the Union's breach-of-contract claim under § 301. (*Id.*).

"The existence of a valid contract between an employer and a labor organization is a necessary prerequisite for federal jurisdiction under Section 301(a)." *RiverStone Grp., Inc. v. Midwest Operating Eng'rs Fringe Benefit Funds*, 33 F.4th 424, 430 (7th Cir. 2022) (citation omitted). As Hall's argument goes, "[o]nce a CBA expires, it no longer functions as a legally enforceable document capable of conferring jurisdiction on a federal court for claims arising after expiration." (ECF 4 at 13). As Hall observes in its motion, the Union acknowledged the CBA's expiration date of June 30, 2021, in the complaint and that the parties have not yet successfully negotiated a successor agreement. (ECF 1 ⁋ 16).

The Union responds by pointing to other allegations in the complaint that the parties agreed the expired CBA would remain "in effect" while the parties negotiated a successor agreement to the CBA. (ECF 16 at 6-7; *see* ECF 1 ⁋⁋ 1, 15, 16). Most relevant, the complaint alleges that "[s]ince [the 2024 Settlement], Hall has recognized both through its actions and the words of its representatives that the terms of the [CBA] are in effect while the [p]arties negotiate the successor agreement." (ECF 1 ⁋ 15). The Union argues that under notice pleading requirements, this allegation is enough to satisfy § 301's requirement that a valid contract exists between the parties. (ECF 16 at 7).

Federal Rule of Civil Procedure 8 calls for "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 570). While a court considering a motion to dismiss must accept a complaint's allegations as true, that "tenet is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 663 (citing *Twombly*, 550 U.S. at 555). Any legal conclusion in a complaint "must be supported by factual allegations." *Id.* at 679; *see Matthews v. Hughes*, No. 14 C 7582, 2015 WL 5876567, at *1 (N.D. Ill. Oct. 5, 2015) ("On a facial challenge to subject matter jurisdiction under Rule 12(b)(1), as on a Rule 12(b)(6) motion, the court must accept as true the complaint's well-pleaded factual allegations, … but not its legal conclusions." (citations omitted)).

Here, the complaint offers just two relevant factual allegations pertaining to Hall's "actions and … words[.]" (ECF 1 ⁋ 15). The first is "[o]n December 24, 2025, Joe Schweiterman responded via email that 'Hall has paid, and will continue to pay, what is required under the status quo CBA.'" (*Id.* ⁋ 20). The second is "[o]n January 12, 2026, Joe Schweiterman responded to the grievance in pertinent part as follows: '[T]he grievance is denied and Hall will not submit this matter to arbitration under an expired agreement.'" (*Id.* ⁋ 24). Clearly, the second statement does nothing to support the Union's allegation that Hall agreed to extend the term of the CBA until the parties successfully negotiated a successor agreement. Quite the opposite.

Nor does Schweiterman's mention of the "status quo CBA" do so. The NLRA "requires unions and employers to 'freeze the status quo' and 'honor the terms and conditions of an expired collective bargaining agreement' as they negotiate a new one." *Operating Eng'rs Local*

*324 Fringe Benefit Funds v. Rieth-Riley Constr. Co.*, 681 F. Supp.3d 746, 758-59 (E.D. Mich. 2023) (quoting *Laborers Health & Welfare Tr. Fund for N. Cal. v. Advanced Lightweight*, 484 U.S. 539, 544 n.6 (1988)). To explain, "where the contract is a collective bargaining agreement, the [NLRA] also comes into play. That statute tells employers and unions they must bargain in good faith with respect to wages, hours, and other terms and conditions of employment." *Id.* (citation and internal omitted); *see* 29 U.S.C. § 158(d)). "[A]n employer commits an unfair labor practice if, without bargaining to impasse, it effects a unilateral change of an existing term or condition of employment." *Litton*, 501 U.S. at 201 (citing *NLRB v. Katz*, 369 U.S. 736, 82 (1962)).

However, the Supreme Court has opined that arbitration clauses are excluded from the prohibition on unilateral changes. *Id.* at 200. That is, "under the NLRA arbitration is a matter of consent, and … it will not be imposed upon parties beyond the scope of their agreement." *Litton*, 501 U.S. at 200; *see Post Trib. Publ'g, Inc. v. Am. Arb. Ass'n, Inc.*, 767 F. Supp. 935, 947 (N.D. Ind. 1991) ("[A]n arbitration clause will not *by operation of the NLRA* continue in effect after the expiration of a collective-bargaining agreement." (citation omitted)). Having said that, it is true that "in certain circumstances the presumption of arbitrability may survive into the post-contract period[.]" *Graphic Commc'ns Union, Chi. Paper Handlers' & Electrotypers' Local No. 2 v. Chi. Trib. Co.*, 794 F.2d 1222, 1226 (7th Cir. 1986). In *Nolde Brothers, Inc. v. Local No. 358, Bakery & Confectionery Workers Union, AFL-CIO*, the court compelled arbitration where a grievance about severance pay arose just four days after termination of the collective bargaining agreement. 430 U.S. 243, 249 (1977). There the Supreme Court held that "where the dispute is over a provision of the expired agreement, the presumptions favoring arbitrability must be "negated expressly or by clear implication." *Id.* at 255 ("The dispute … , although arising after the expiration of the collective-bargaining agreement, clearly arises under that contract."). A post-

expiration grievance can be considered to arise under the contract only where "it involves facts and occurrences that arose before expiration, where an action taken after expiration infringes a right that accrued or vested under the agreement, or where, under normal principles of contract interpretation, the disputed contractual right survives expiration of the remainder of the agreement." *Litton*, 501 U.S. at 205-06.

Furthermore, there is a time limit to the *Nolde* presumption. "[A] post-expiration grievance must be asserted within a reasonable time after its discovery—within a time … when it is still logical to apply the *Nolde* presumption." *R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Eng'rs, Local Union 150, AFL-CIO*, 422 F.3d 522, 530 (7th Cir. 2005). In *Local 703, International Brotherhood of Teamsters v. Kennicott Bros. Co.*, the Seventh Circuit found that a six-month period between the expiration of the collective bargaining agreement and the events triggering the grievances "eviscerate[d] the *Nolde* presumption of arbitrability." 771 F.2d 300, 303 (7th Cir. 1985) ("Although it may be reasonable to presume that parties intend to arbitrate grievances arising shortly after the expiration of a contract, the presumption weakens as the time between expiration and grievance events increases."); *see also Local 106, Serv. Emps. Int'l Union v. Homewood Mem'l Gardens, Inc.*, No. 87 C 0403, 1987 WL 10996, at *4 (N.D. Ill. May 12, 1987) (finding that a three-year lag between expiration and events leading to the grievance is "much too long" to maintain the presumption of arbitrability), *aff'd,* 838 F.2d 958 (7th Cir. 1988). Given this precedent, the four-and-a-half years lag here between the expiration of the CBA and the January 2026 grievance alleged in the complaint destroys any presumption of post-expiration arbitration.

To reiterate, any legal conclusion in a complaint "must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. The complaint at issue lacks plausible facts to support the Union's allegation that the terms of the CBA, including the arbitration provision, are still "in

effect" while the parties negotiate the successor agreement. (*See* ECF 1 ¶¶ 1, 15, 16). The few "actions" or "words" of Hall that the Union includes in the complaint are inapposite to that legal conclusion. Consequently, because the complaint fails to plausibly allege that a contractual duty to arbitrate exists between the parties, the motion to dismiss will be granted pursuant to Rule 12(b)(1) and (6). The Union will, however, be given leave to replead, as it is possible the Union may be able to state a § 301 claim supported by plausible facts by way of an amended complaint. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519-20 (7th Cir. 2015) ("Unless it is *certain* from the fact of the complaint that any amendment would be futile or otherwise unwarranted, the district court should grant leave to amend after granting a motion to dismiss).[2]

***D. Conclusion***

For the foregoing reasons, Hall's motion to dismiss (ECF 3) is GRANTED. The Union is AFFORDED to and including September14, 2026, to file an amended complaint.

SO ORDERED.

Entered this 13th day of August 2026.

/s/ Andrew L. Teel
Andrew L. Teel
United States Magistrate Judge

[2] Because dismissal is warranted on Hall's argument addressed herein, the Court need not reach Hall's other arguments in support of dismissal.